BETTY L. KINKENON, APPELLEE, V.
PERCY L. HUE, APPELLANT.

301 N.W.2d 77

Filed January 16, 1981.   No. 43071.

William J. Tighe for appellant.

Bernard T. Schafersman for appellee.

Heard before BOSLAUGH and WHITE, JJ., and COLWELL, RIST, and HOWARD, District Judges.

WHITE, J.

This case is on appeal from the District Court for Washington County, Nebraska. Appellee sought to recover from appellant property she alleged she was entitled to pursuant to an oral agreement between the parties. Appellant denied the existence of a contract, alleged that appellee is not entitled to the property, and asserted that, had there been a contract, the same would have been illegal and unenforceable. Appellee also alleged that appellant made a gift to her of property now in his possession and she requested return of that property. Appellant argued that no gift was intended or proved. Appellee's final cause of action alleged that she performed valuable services for appellant and she requested payment of the value thereof. Appellant contended that the benefits to appellee exceeded the value of her services. The trial court found generally for the appellee and awarded her one-half the value of the property titled in the parties' names as joint tenants, and $38,979.37 under the express oral agreement between the parties. Appellant appeals and assigns as error that the court erred by finding (1) That appellee had any interest in the jointly held property; and (2) That appellee had any interest in appellant's property by virtue of an oral agreement.

Appellant and appellee lived together from March 1972 until June 1978. Although they never married

each other, they did engage in sexual relations. At the time appellant invited appellee to live with him, he was 54 years old. His wife had predeceased him. He lived alone on a 185-acre farm near Herman, Nebraska, and cared for his father who lived nearby on a 160-acre farm. Appellee at the time was a 52-year-old woman whose husband had predeceased her, and she lived with her daughter in Fremont, Nebraska.

In January 1972, the appellant invited appellee to move onto his farm. In March 1972, appellee agreed. The record shows that appellant had asked appellee to marry him but that appellee declined. Between March 1972 and June 1973, appellant placed appellee's name as joint owner with rights of survivorship on three bank accounts, lockboxes, two automobiles, later a third automobile, and $24,000 of mutual funds, and made her the beneficiary of both of his life insurance policies. The evidence is not controverted that while appellee lived with appellant she cleaned the house, washed clothes, cooked the meals, ran errands for the appellant, cared for the lawns and garden, canned food, cared for appellant's father while he was alive, did the bookkeeping for appellant's business and farm operations, and provided nursing services to appellant while he was convalescing.

It was appellee's testimony that when she agreed to move onto the farm, she did so and agreed to perform the above services because appellant stated that he had the means and would take care of and provide for her for the rest of her life. Appellant agrees that the services were performed and accepted but denies that they were rendered pursuant to any agreement. In 1974, appellant and appellee began construction of a new house on one of appellant's farms. The house was completed in 1975. The testimony of both appellant and appellee established that appellant supplied the financial consideration for the house; both parties assisted in the planning, decorating, and furnish-

ing of the house. Appellee's testimony, corroborated by two other witnesses, was that appellant had built the house for appellee and that she was entitled to live in it for as long as she lived. Appellant testified that he had the house built for appellee and himself, but denied the existence of an agreement that appellee was entitled to it for the rest of her life.

The trial court found in favor of appellee, and the record is sufficient to support a finding that appellee agreed to provide homemaking and other domestic services, as well as business skills, in return for appellant providing for her daily needs and her future security. In 1978, appellee moved back into Fremont. Her testimony was that appellant had threatened her and she was concerned for her safety. She then brought this action to recover property titled in her name in appellant's possession and the value of a life estate in appellant's home.

Appellee asserted in her petition that appellant had made a gift to her of one-half the value of each of three cars which appellant had titled in his and appellee's names as joint tenants with rights of survivorship. On appeal, appellant argues that the trial court erred by applying to this situation the rule adopted by this court in *Hoover v. Haller*, 146 Neb. 697, 21 N.W.2d 450 (1946). In that case, we held that, between husband and wife, where the party who provided the consideration titles property in both names as joint tenants, the presumption is that one spouse has made a gift to the other and each has an equal interest in the property. The record in this case shows that the parties were not husband and wife. The Nebraska certificate of title act, Neb. Rev. Stat. §§ 60-101 to 117 (Reissue 1978), controls this situation. "A certificate of title to a motor vehicle is generally conclusive evidence in this state of the ownership of the vehicle." *Turpin v. Standard Reliance Ins. Co.*, 169 Neb. 233, 234, 99 N.W.2d 26, 28 (1959). The exceptions to this rule apply only to prevent fraud and coercion. *Forman*

*v. Anderson,* 183 Neb. 715, 163 N.W.2d 894 (1969). As in the *Forman* case, the act of the appellant in placing the title in the names of both himself and appellee was done freely and voluntarily. There was no showing of a mistake of fact, or of any coercion or fraud.

Where the instrument is silent as to the interests taken by joint tenants, the presumption is that their interests are equal. *Giles v. Sheridan,* 179 Neb. 257, 137 N.W.2d 828 (1965).

In view of the above, we conclude that there is no merit to appellant's first assignment of error.

Appellant's second assignment of error states that the trial court erred in finding that appellee was entitled to a life estate in the house built by appellant and appellee in 1974 on appellant's property. Appellee asserts, as the basis for her claim, an express oral agreement between the parties. She alleges that, in consideration for her moving into appellant's home, providing him with domestic services, business aid, and nursing skills, he promised to provide for her for the rest of her life. She now asks for specific performance of that contract. Appellant's position is that there was no such agreement, and had there been, it would be void and in violation of public policy and the statute of frauds.

In appeals to this court in suits in equity, the trial shall be de novo on questions of fact preserved for review, and we must reach an independent conclusion in findings of fact without reference to the conclusion reached in the District Court. Neb. Rev. Stat. § 25-1925 (Reissue 1979). "However, it is also the well-established rule that where the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and therefore must have accepted one version of the facts rather than the opposite." *Edmunds v. Edwards,* 205 Neb. 255, 266, 287 N.W.2d 420, 426 (1980).

The trial court specifically found that appellee had proved the existence of an express oral agreement and established that, in exchange for her services, appellant was to provide her with the use of the home built in 1974 for the rest of her life. The testimony of the parties and their witnesses was sufficient to permit the trial court judge to find that the parties did have an agreement; that appellee did live with appellant because she believed he would provide for her for the rest of her life; and that appellant understood and agreed to this. It is clear that the trial court did not believe appellant's contention that these services were gratuitous, and "[t]here is no more reason to presume that services are contributed as a gift than to presume that funds are contributed as a gift . . . ." *Marvin v. Marvin*, 18 Cal. 3d 660, 683, 557 P.2d 106, 121, 134 Cal. Rptr. 815, 830 (1976). Personal services are sufficient consideration to support an agreement.

In *Taylor v. Frost*, 202 Neb. 652, 276 N.W.2d 656 (1979), we held that the testimony of the parties was sufficient to establish an agreement between them. The agreement was entered into while the parties were engaged in a nonmarital, although presumptively sexual, relationship. We then adopted the following rule: "'A bargain in whole or in part for or in consideration of illicit sexual intercourse or of a promise thereof is illegal; but subject to this exception such intercourse between parties to a bargain previously or subsequently formed does not invalidate it.'" *Id.* at 656, 276 N.W.2d at 658, quoting Restatement of Contracts § 589. The record shows that sexual services did not form the basis for the agreement between the parties. For that reason, this agreement does not violate public policy.

Despite conflicting evidence, the trial court judge did find that appellant expressly agreed that appellee could live in the house "for as long as she wanted." Although the contract was oral, it was an express

agreement. The terms of such agreement are to be found in the parties' respective versions of the agreement, and their acts and conduct in light of the subject matter. 1 Corbin on Contracts, § 18 (1963). See, also, *Dunmire v. Cool*, 195 Neb. 247, 237 N.W.2d 636 (1976). The trial court weighed the testimony of each party and believed the testimony of appellee, appellee's daughter, and appellant's cousin that appellee was entitled to live in the house as long as she lived. These findings are supported by the evidence.

The District Court also found that, although this contract was otherwise within the statute of frauds, appellee's part performance had taken it out and it was enforceable to the extent that she was entitled to life use of the house. "'Performance of personal services * * * in consideration of an oral contract for the conveyance of realty, by deed or will may be shown by evidence that the attendant was frequently observed at his duties, and that they were performed and that they were acknowledged by and accepted by the other party.'" *Dunmire v. Cool*, *supra* at 251, 237 N.W.2d at 639, quoting *Robinette v. Olsen*, 114 Neb. 728, 209 N.W. 614 (1926). The record clearly shows that appellee performed her homemaking, bookkeeping, and nursing services for appellant and that he knowingly accepted them.

Equity will grant specific performance of an oral agreement to transfer property to another if it is proved by evidence convincing and satisfactory and if it has been wholly performed by one party and its nonperformance would be a fraud on him. *Dunmire v. Cool*, *supra*. The evidence in this case is clear that appellee and appellant had entered into this personal services contract. "Its performance was referable solely to their existing understanding and the carrying out of its provisions was solely referable to their contract and not such as might reasonably be referable to some other or different contract or relationship." *Dunmire v. Cool*, *supra* at 251, 237 N.W.2d at 639.

The District Court did not specifically find, but we must assume its conclusion was, that appellant breached the agreement by threatening appellee and forcing her to leave his house. This conclusion is supported by the evidence. Appellee is entitled to relief on the basis of this breach. The trial court held that appellee is entitled to a life estate in the house built by the parties in 1974. The judgment required that appellant pay appellee the equivalent of the value of her life estate in the house and one-half the difference in the value of the automobiles awarded each party.

The judgment of the trial court is affirmed.

AFFIRMED.

HOWARD, District Judge, concurring in part and, in part, dissenting.

I concur in the majority's treatment of the jointly held property, but I can find no oral agreement supporting the award of the value of a life estate in the home. When plaintiff moved in with defendant in 1972, his only statement concerning her future was, "There is money enough out there to take care of all three of us for the rest of our lives." It was agreed that if plaintiff became unhappy with the situation, she could go back to Fremont and defendant would help her find a job. There was no discussion concerning plaintiff's life use of the new home until 1974, when it was under construction. The defendant, not the plaintiff, according to plaintiff's own testimony, introduced the idea that he would make a will leaving her a life use of the home and $1,000 or $1,200 per month, insurance proceeds, funds in the checking accounts, and the contents of the safe deposit boxes. Meanwhile, the parties were both performing and receiving consideration under their original arrangement. Plaintiff pressed defendant to proceed with making the will on several occasions, and he never declined to do so, according to plaintiff's testimony, until an altercation which occurred the day before she moved out.

This court has held that a declaration of intention to make a testamentary disposition of property does not tend to support the conclusion that any oral contract exists concerning the property or its disposition. *Diez v. Rosicky*, 145 Neb. 242, 16 N.W.2d 155 (1944); *Gerdes v. Omaha Home for Boys*, 166 Neb. 574, 89 N.W.2d 849 (1958). The existence of such a contract must be proved by clear, satisfactory, and convincing evidence, as this court has never failed to say. More to the point, such a contract is void as within the statute of frauds even though proved by such clear evidence, unless performance by the claimant is such as is referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract. *Gerard v. Steinbock*, 169 Neb. 828, 101 N.W.2d 194 (1960); *O'Neal v. First Trust Co.*, 160 Neb. 469, 70 N.W.2d 466 (1955). In my view, the plaintiff has failed to establish that her performance was referable solely to any agreement by defendant to make a will in her favor. And I cannot find in the evidence that any other bargain was struck for life use of the home, notwithstanding defendant's stated reasons for building it.

COLWELL, District Judge, joins in this concurrence and dissent.