SYLVIA DIANE RHUE, Plaintiff v. DOY RAY RHUE, Defendant

No. COA07-453

(Filed 18 March 2008)

**Unjust Enrichment; Trusts— cohabiting parties—parcels purchased in defendant's name—unjust enrichment—constructive trust**

The evidence was sufficient to support the jury's finding that the female plaintiff who cohabited with the male defendant has a constructive trust in two parcels of land acquired in defendant's name during their relationship on the basis of unjust enrichment where the evidence tended to show that defendant told plaintiff that they would grow old together and that he was purchasing properties for their retirement; plaintiff helped to build a home on one parcel, assisted defendant in improving a garage where he worked as a mechanic, and worked alongside him in his construction business; plaintiff paid expenses for defendant's business for labor and materials from her personal account; plaintiff

**RHUE v. RHUE**

[189 N.C. App. 299 (2008)]

raised defendant's son and grandson and managed the household expenses; the promises defendant made to plaintiff were in the context of services provided by defendant for defendant's business and daily maintenance, and sexual services were not the consideration for defendant's promises; and the parties conducted their lives as a partnership so that a confidential relationship existed between them.

Appeal by defendant from judgment entered 28 June 2006 and order entered 3 November 2006 by Judge Benjamin G. Alford in Carteret County Superior Court. Heard in the Court of Appeals 31 October 2007.

*Williams Mullen Maupin Taylor, by Kevin W. Benedict, for plaintiff-appellee.*

*Bailey & Way, by John E. Way, Jr., for defendant-appellant.*

CALABRIA, Judge.

Doy Ray Rhue ("defendant") appeals a judgment entered upon a jury verdict finding a portion of defendant's real property subject to a constructive trust and an order denying his motion for judgment notwithstanding the verdict. We affirm.

Sylvia Diane Rhue ("plaintiff") and defendant (collectively "the parties") were married on 17 July 1976, separated in December 1976, and divorced on 23 March 1978. In June 1978, the parties reconciled and plaintiff moved into defendant's residence. Although the parties never remarried, they continued to live together until March 2003 when defendant asked plaintiff to leave. On 24 March 2004, plaintiff filed a complaint asserting claims for unjust enrichment, resulting and/or constructive trust, an equitable lien, and partnership. The Honorable Benjamin G. Alford ("Judge Alford") presided over a jury trial in Carteret County Superior Court held on 22 May 2006.

The parties' relationship lasted more than twenty-six years. Shortly after June 1978, plaintiff became the primary caregiver for defendant's son from a prior marriage, Doy Ray Rhue, Jr. ("Junior"). Junior had a son named Michael Ryan Rhue ("Michael"). When Junior passed away, Michael's mother asked plaintiff and defendant to take care of Michael. Later, plaintiff and defendant were granted legal custody of Michael. After the parties' relationship ended, plaintiff remained Michael's primary caregiver.

Defendant acquired thirteen different parcels of land which he told plaintiff were acquired to help provide for them in their retirement. All but one of those parcels was titled in defendant's name only. The parties personally built a home together on a lot that was one of five parcels of property known as the Ware Creek Property in Beaufort, North Carolina. The five parcels have been designated as parcels "A, B, C, D, & E" ("Ware Creek properties"). Two of the five parcels, parcels C and D, were acquired before the parties resumed their relationship in June 1978. Defendant acquired parcels A, B, and E after June 1978. The parties built a home on parcel C of the Ware Creek properties ("Parcel C home").

Plaintiff first assisted in the demolition and then the construction of the Parcel C home. Specifically, she helped tear down boards, take out nails, and dig the foundation. The construction lasted four years to enable the parties to pay the expenses in stages. Plaintiff continued to build the Parcel C home even when she worked outside the home in order to obtain health insurance for herself, defendant and Junior. Plaintiff also made the payments for a life insurance policy which, over time, totaled $17,509.58. Plaintiff assisted in paying the household expenses, $6,986.62 for defendant's medical bills when he became ill, and paid child care expenses for Michael.

Defendant was self-employed as a mechanic and worked on automobiles in the shed located behind their trailer. Plaintiff helped defendant build a better garage for his mechanic's business. When defendant began a small construction business known as Doy Ray Rhue Construction, plaintiff assisted in the business by helping to lay drainage pipes and rake gravel over the pipes. Plaintiff made payments from her personal checking account for the benefit of the construction business, including payments to workers for their labor and payments for materials and parts. Carl Rancer testified he observed plaintiff paying defendant's workers "many times" and "on a fairly regular basis."

Plaintiff testified that the parties' joint funds earned during the course of their relationship were used to buy the Ware Creek properties, along with eight other properties. Plaintiff presented exhibits indicating she paid $1,883.25 in "land payments." Plaintiff also testified that "[defendant] said it was always part mine. That's all I can tell you. He did and he promised." She added that "[o]ver the course of 25 years we done things together and he always told me it was part mine. And me taking care of his young'un, taking care of him and our house-

hold and everything else . . . ." She stated at trial that the money collected from rents on the properties was their money.

Defendant testified he told plaintiff that as long as he had a roof over his head, she would also always have one. Defendant also testified that he borrowed the money and paid for the properties at issue and plaintiff only contributed financially to payment of the McDaniel Road property which is titled in her name. Defendant further testified that plaintiff was not a partner in his business because she was employed outside the home.

Patricia Beck, a friend of the parties, testified that plaintiff and defendant worked side by side as a team. Patricia Beck also testified that defendant "always referred to [the property they owned] as our property . . . Diana and I purchased this." James Beckwith testified that plaintiff worked in defendant's construction business on a regular basis. Joan Beckwith testified the parties talked in general about buying different properties so they could grow old together and have property accumulated together. Mary Rancer testified she heard defendant say he would take care of plaintiff and illustrated her testimony with an example. When defendant was in the hospital preparing for open heart surgery, he was concerned about how to protect plaintiff. Mary Rancer also testified that defendant told her he would provide for plaintiff for as long as he lived and after he died. Defendant also told her of the plan to buy properties in order to bring in income.

At the close of the plaintiff's evidence, the court denied defendant's motion to dismiss the constructive trust claim. At the close of all the evidence, defendant renewed his motions to dismiss. The court did not rule on defendant's motions at the close of all the evidence but allowed arguments to address the instructions to the jury. The following day, after hearing further arguments, the trial court overruled defendant's objections to the constructive trust charge.

The trial court submitted ten issues to the jury. Although there were thirteen disputed parcels, some of the issues related to more than one tract of land. For example, issue 1 relates to parcels "C & D" and issue 2 relates to parcels "A, B, D, & E" of the Ware Creek properties. The jury found the parcels in issues 1 and 2 subject to a constructive trust in favor of the plaintiff, that the conduct of defendant deprived plaintiff of a beneficial interest in all five parcels and that plaintiff was entitled to a one hundred percent beneficial interest in all five parcels. The jury found that plaintiff was not entitled to a constructive trust on the remaining eight parcels of property.

RHUE v. RHUE

[189 N.C. App. 299 (2008)]

On 28 June 2006, Judge Alford entered judgment on the jury verdicts. Defendant filed a motion for judgment notwithstanding the verdict as to the first issue on 6 July 2006. Judge Alford denied defendant's motion on 3 November 2006. Defendant timely filed his notice of appeal from the judgment and the order denying his motion for judgment notwithstanding the verdict on 21 November 2006.

### A. Motion for Judgment Notwithstanding the Verdict

Defendant alleges the trial court erred in denying his motion for a directed verdict at the end of the plaintiff's evidence, denying his motion for a directed verdict at the close of all the evidence, and denying his motion for judgment notwithstanding the verdict. Defendant argued four issues: (1) the parcels were acquired "prior to any allegation of constructive trust"; (2) no evidence supports the proposition that defendant used the plaintiff's money when he purchased the property in question; (3) plaintiff attempted to use a common law marriage theory to establish a constructive trust; and (4) there is insufficient evidence to establish a constructive trust.

We note that defendant's motions at the close of the plaintiff's evidence and at the close of all the evidence were motions to dismiss for insufficient evidence and not motions for a directed verdict as he erroneously states in his brief. "[I]n a jury trial, the proper motion to dismiss is one for directed verdict pursuant to Rule 50(a)." *Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 799-800 (1999) (citation omitted). Despite this error, we exercise our discretion to address the merits of defendant's argument. *Wheeler v. Denton*, 9 N.C. App. 167, 168, 175 S.E.2d 769, 770 (1970) ("[T]he name of the motion is not as important as the substance.").

### B. Standard of Review

"When reviewing motions for directed verdict and judgment notwithstanding the verdict, the trial court must determine whether the evidence, considered in the light most favorable to the nonmoving party, is sufficient to present the case to the jury." *Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 47, 524 S.E.2d 53, 58 (1999) (citation omitted). "The evidence is sufficient to go to the jury when there is more than a scintilla of evidence to support each element of the claim." *Guilford County v. Kane*, 114 N.C. App. 243, 245, 441 S.E.2d 556, 557 (1994).

### C. Unjust Enrichment

"The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circum-

stances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761, *aff'd*, 312 N.C. 324, 321 S.E.2d 892 (1984). "No contract, oral or written, enforceable or not, is necessary to support a recovery based upon unjust enrichment." *Parslow v. Parslow*, 47 N.C. App. 84, 88-89, 266 S.E.2d 746, 749 (1980) (citation omitted). Recovery in unjust enrichment "may arise where one's property is improved or paid for in reliance upon the owner's unenforceable promise to convey the land or some interest in it to the contributor." *Thomas v. Thomas*, 102 N.C. App. 124, 127, 401 S.E.2d 396, 398 (1991) (quoting *Collins*, 68 N.C. App. at 591, 315 S.E.2d at 761). "But the contributor must prove the promise." *Id.* (citing *Wright v. Wright*, 305 N.C. 345, 289 S.E.2d 347 (1982)).

### D. Constructive Trust

Defendant argues the trial court erred in denying his motion for a directed verdict because he acquired title to parcels C and D prior to any allegation of constructive trust. Defendant cites *Patterson v. Strickland* in support of this argument. In *Patterson v. Strickland*, 133 N.C. App. 510, 519, 515 S.E.2d 915, 920 (1999), this Court addressed the issue of whether a purchase money resulting trust arose between the parties. Defendant cites the rule from *Patterson* that a trust is created in the same transaction in which legal title passes. Since the rule as stated in defendant's brief relates to a purchase money resulting trust and not a constructive trust which is an issue in this case, we overrule any error on these grounds.

Next defendant argues that there is a lack of evidence to support several findings: first, that defendant used plaintiff's money to purchase parcels C and D; and second, a lack of evidence that either a fiduciary or confidential relationship existed to support a constructive trust on parcels A, B, and E. Defendant waived his argument as to parcels A, B, and E in his motion for judgment notwithstanding the verdict. N.C. Rules of Civil Procedure Rule 50(b) provides, "[n]ot later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict . . . ." Defendant asked the court in his motion for judgment notwithstanding the verdict to set aside the verdict as to issue no. 1 and enter judgment in accordance with his "previous motion for [a] directed verdict as to Issue No. 1." Issue No. 1 addressed parcels C and D only. Therefore, we do not consider his argument as to parcels A, B, and E.

Defendant contends that because plaintiff received proceeds from another property purchased by the parties which was later sold, and because plaintiff became a one-half undivided owner in another tract, any property owned solely by the defendant was not intended to be jointly owned.

Our Supreme Court defined constructive trusts in *Wilson v. Development Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970):

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Id.* (citations omitted). Plaintiff's basis for a constructive trust claim is the latter, "some other circumstance." *Id.* In this case, plaintiff alleged unjust enrichment since defendant promised her the properties they bought and renovated together were to be used for their retirement and also promised that he would provide for her. Plaintiff testified at trial that defendant told her they would "grow old together" and defendant told her he was "buying pieces of property, that [they]'ll have when [they] retire." In addition, he told her that,

> I will never have to worry about anything, that I'd always be taken care of and when we grow old, we would have something to live on. We had our burial plots and everything paid for. We had our insurance and everything made out to one another. . . . We were going to live the rest of our lives out together and have something to fall back on. Sell properties so that we'd have something to live on when we got old, exactly what he said.

Plaintiff testified that she did not know the property defendant bought for them was not in her name until after "he had already done it" and then "he said it didn't matter because it was part mine anyway."

Besides promises defendant made, plaintiff provided numerous benefits to defendant. She improved his property by helping to build the Parcel C home. She also assisted defendant in improving his garage. She worked alongside defendant in his business, kept up his home, and raised Junior and Michael. During the time plaintiff conferred these benefits, plaintiff relied on defendant's promise that she would share in the results of their mutual efforts in the business and

property ownership. At the time of trial, the value of the Ware Creek properties was $1.2 million and the remaining eight properties were valued collectively at $1.245 million. It would be inequitable for the defendant to benefit from plaintiff's reliance on his promise that the property was to be used for their mutual benefit. *Collins*, 68 N.C. App. at 591, 315 S.E.2d 759 at 761. Viewed in the light most favorable to the plaintiff, we find sufficient evidence of such a promise and her reliance on that promise to survive a motion for a directed verdict. *Summey*, 283 N.C. at 647, 197 S.E.2d at 554; *Weatherford v. Keenan*, 128 N.C. App. 178, 180, 493 S.E.2d 812, 814 (1997) (a constructive trust may be imposed to prevent unjust enrichment to holder of legal title).

Defendant also contends that by allowing the jury to render a verdict on the first issue, the trial court "establish[es] a basis for common law marriage to be recognized in North Carolina." We disagree.

A similar argument was made in *Wike v. Wike*, where the parties reconciled after a divorce and participated in a landscaping business together, 115 N.C. App. 139, 140, 445 S.E.2d 406, 407 (1994). The plaintiff asserted a claim for money owed from her efforts in the partnership. *Id.* The defendant argued her claim was barred by public policy because their illicit relationship was the basis for their agreement. *Id.*, 115 N.C. App. at 141-42, 445 S.E.2d at 408. This Court disagreed because no evidence was presented that the illicit relationship formed part of the consideration of a binding contract. *Id.*, 115 N.C. App. at 142, 445 S.E.2d at 408.

"[A]greements regarding the finances and property of an unmarried but cohabitating couple, whether express or implied, are enforceable as long as sexual services or promises thereof do not provide the consideration for such agreements." *Suggs v. Norris*, 88 N.C. App. 539, 542-43, 364 S.E.2d 159, 162 (1988). Furthermore "where appropriate, the equitable remedies of constructive and resulting trusts should be available. . . ." *Id.*, 88 N.C. App. at 543, 364 S.E.2d at 162.

Viewing the evidence in the light most favorable to the plaintiff, the facts as presented at trial are sufficient to bring the issue of a constructive trust on parcels C and D to the jury. *See Guilford Co.*, 114 N.C. App. at 345, 441 S.E.2d at 557 (if there is more than a scintilla of evidence to support each element, then the evidence is sufficient to go to the jury). The constructive trust issue was supported by the

unjust enrichment claim. *See Weatherford,* 128 N.C. App. at 180, 493 S.E.2d at 814 ("A constructive trust may be imposed to prevent the unjust enrichment of the holder of legal title to property."). The promises defendant made to the plaintiff were in the context of services the plaintiff provided for defendant's business and daily maintenance. There is no evidence that sexual services formed the consideration for defendant's promise. This Court has consistently held that equitable relief for such relationship interests is permissible, as long as the promises are not based on sexual services. *Suggs,* 88 N.C. App. at 542-43, 364 S.E.2d at 162; *Wike,* 115 N.C. App. at 141, 445 S.E.2d at 407; *Thomas,* 102 N.C. App. at 126, 401 S.E.2d at 398 (plaintiff who cohabitated with defendant did not have valid quasi-contract claim but holding did not bar an unjust enrichment claim); *Collins,* 68 N.C. App. at 592, 315 S.E.2d at 762.

Defendant cites the content of a jury note to the trial court as evidence that the jury wanted to give the plaintiff relief but yet "knew the defendant did not act in any manner to create a trust . . . ." We disagree.

The note in question reads: "We want to know the definition of deprive. Does it mean that he was dishonest? We are having [a] problem with issue B. If we answer that she has [an] interest[,] do we have to say he deprived her?" The language of the jury verdict issue 1, part B reads, "Did the conduct of the Defendant deprive the Plaintiff of a beneficial interest in Parcels . . . of the Ware Creek Property on Plaintiff's Exhibit No. 2?"

Defendant's argument appears to rely on the erroneous assumption that a finding of dishonesty on the part of the defendant is necessary to establish a constructive trust. A constructive trust is appropriate "to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Wilson,* 276 N.C. at 211, 171 S.E.2d at 882. Evidence of fraud is one way to establish an unjust enrichment claim but it may not be necessary. Evidence of fraud is unnecessary if the plaintiff establishes a "breach of duty" or "some other circumstance making it inequitable" for the defendant to retain his property interest. *Id.*

Here, the evidence showed defendant acquired Ware Creek tracts A, B, and E during his relationship with the plaintiff, while the plaintiff assisted defendant in the day-to-day living, expenses, care of his

grandson, and the operation of his business. In addition, he promised plaintiff the property he acquired was for their mutual benefit. As a result of plaintiff's efforts, Ware Creek tract C was improved. After twenty-six years, defendant ended the relationship and the jury concluded that it was inequitable for him to retain the Ware Creek properties. No finding of fraud or dishonesty was necessary for the jury verdict. Therefore, this assignment of error is overruled.

### E. Partnership

Defendant denies a confidential relationship was established. He believes the lack of agreement between the parties and the fact that he did not use plaintiff's money to purchase the property was evidence that no confidential relationship was established. We disagree.

"An unmarried couple may, by words and conduct, create an implied-in-fact agreement regarding the disposition of their mutual properties and money as well as an implied agreement of partnership or joint venture." *Suggs*, 88 N.C. App. at 542, 364 S.E.2d at 161 (citation omitted). "To prove existence of a partnership, an express agreement is not required; the intent of the parties can be inferred by their conduct and an examination of all the circumstances." *Wike*, 115 N.C. App. at 141, 445 S.E.2d at 407 (citing *Peed v. Peed*, 72 N.C. App. 549, 325 S.E.2d 275 (1985)).

A partnership is a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business.

*Zickgraf Hardwood Co. v. Seay*, 60 N.C. App. 128, 133, 298 S.E.2d 208, 211 (1982).

Plaintiff presented sufficient evidence to infer that the parties conducted their daily lives as a partnership. Plaintiff testified she assisted in defendant's business by paying for expenses such as labor and materials from her personal account. She also participated in manual labor for both defendant's business and personal projects including building the home on Parcel C. Plaintiff not only managed the household expenses, and child care, but also paid other expenses such as life insurance payments. All this was done with the understanding that she would be taken care of by the defendant, and that he purchased properties for their retirement. The lack of a formal

STATE v. HOPE

[189 N.C. App. 309 (2008)]

`agreement between the parties is not dispositive of whether a partnership existed. *Wike*, 115 N.C. App. at 141, 445 S.E.2d at 407.

Defendant next argues the evidence was not clear, strong and convincing. We disagree. Plaintiff presented testimony from several witnesses as well as records of receipts she kept for the last twenty-four years. This evidence established her contributions to their properties and their household, as well as her contributions to maintain defendant's business, and care for defendant's grandson.

Defendant finally argues that the lack of evidence of "actual or presumptive fraud or breach of a confidential relationship" warranted a directed verdict in his favor. Because fraud is not necessary to establish a legal basis for a constructive trust, and plaintiff presented ample evidence for the jury to infer that a confidential relationship, both personal and business, existed between the parties, this assignment of error is overruled. We affirm.

Affirmed.

Judges STEPHENS and ARROWOOD concur.